## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| MUSTAFA ALI, | : | No. 3:24-CV-1072 |
| **Plaintiff** | : | |
| | : | (Judge Munley) |
| v. | : | |
| | : | |
| LAUREL HARRY, *et al.*, | : | |
| **Defendants** | : | |

::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::

### MEMORANDUM

Plaintiff Mustafa Ali initiated the above-captioned *pro se* action under 42 U.S.C. § 1983,[1] alleging constitutional infringements and violation of the Religious Land Use and Institutionalized Persons Act of 2000 (RLUIPA), 42 U.S.C. § 2000cc. He contends that Pennsylvania Department of Corrections (DOC) officials are substantially burdening his religious exercise while incarcerated in state prisons. Defendants move to dismiss Ali's complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). The court will grant in part and deny in part Defendants' motion.

## I.    BACKGROUND

Ali is incarcerated at the State Correctional Institution, Mahanoy (SCI Mahanoy), in Frackville, Pennsylvania. (Doc. 1 ¶ 3). He avers that he is a life-

---

[1] Section 1983 creates a private cause of action to redress constitutional wrongs committed by state officials. The statute is not a source of substantive rights; it serves as a mechanism for vindicating rights otherwise protected by federal law. See Gonzaga Univ. v. Doe, 536 U.S. 273, 284-85 (2002).

long practicing Salafi Muslim.  (Id. ¶ 7).  This religion includes, among other practices, participating in two "celebratory feasts" called Eid al-Fitr and Eid al-Adha.  (Id. ¶¶ 8-11).  Ali asserts that an integral part of Eid al-Fitr and Eid al-Adha is consuming "Halal" foods prepared in a specific manner that conforms with Islamic beliefs.  (Id. ¶¶ 12-14, 18).

According to Ali, for decades, inmates were able to celebrate these feasts by eating Halal food donated by outside Islamic organizations and then, when that practice was ended by the DOC, Muslim inmates could use their own funds to purchase Halal food from the DOC's vendor.  (Id. ¶¶ 15-17).  On February 24, 2022, George Little—then Acting Secretary of the DOC—issued a memorandum that substantially changed the procedures and practices of ceremonial meals. (Id. ¶ 19; Doc. 1-2).  Under this February 2022 memo, beginning on January 1, 2023, "faith groups accommodated with Ceremonial Meals [would] instead be accommodated with up to two (2) Fellowship Meals a year."  (Doc. 1-2). "Fellowship Meals" would "permit inmates of those faith groups to provide input on the mainline "best meal" to be served at two holy day observances per year; however, optional menu items [would] no longer be available."  (Id.)

On November 15, 2023, Secretary of Corrections Laurel R. Harry issued a notice indicating that Section 1 of DC-ADM 819 "Religious Activities" was being revised.  (See Doc. 1-3; Doc. 1 ¶ 22).  Ali asserts that, as part of this policy

revision, inmates are permitted to supplement a "Religious Meal" by purchasing specialty food items, but these items must be "shelf-stable" products that do not require refrigeration, heating, preparation, or cooking and instead must be "ready to eat from the package."  (Doc. 1 ¶ 24; <u>see</u> Doc. 1-3 at 2 ¶¶ 16-17).  Ali alleges that this restriction (which he refers to as the "Shelf-Stable Policy") prevents him from celebrating Eid al-Fitr and Eid al-Adha in accordance with Islamic law.  (<u>See</u> Doc. 1 ¶¶ 26-27, 34-37; Doc. 24 at 3, 4).  Specifically, he contends that the Shelf-Stable Policy conflicts with Halal requirements and thus he is unable to consume the appropriate foods for the Islamic celebratory feasts, thereby substantially burdening his exercise of religion.  (Doc. 1 ¶¶ 34, 35, 37).  Ali further maintains that he requested a religious accommodation in the form of being able to purchase traditional Halal food items for the celebratory feasts (as was permitted prior to the January 1, 2023 policy change), but his accommodation requests were denied by Ulli Klemm, the DOC's Religious Services Administrator.  (<u>Id.</u> ¶¶ 5, 28-30).

Finally, Ali contends that the DOC has made special accommodations for other religions with respect to religious meals, in particular the "Passover" holiday meal celebrated by prisoners adhering to the Jewish faith.  (<u>Id.</u> ¶ 33).  Ali alleges that the DOC uses its own funds to purchase "specialty food items" for the

Passover meal, thus contradicting its own internal policies and favoring one religion over another.  (Id.)

Ali raises three causes of action in his complaint: First Amendment free exercise, Fourteenth Amendment equal protection, and violation of RLUIPA.  (Id. at p. 7).  He seeks compensatory and punitive damages, as well as declaratory and injunctive relief.  (Id. at pp. 7-8).  He names as defendants Secretary Harry and Religious Services Administrator Klemm.  (Id. ¶¶ 4-5).[2]

Defendants now move to dismiss the complaint pursuant to Federal Rule of Civil Procedure 12(b)(6).  (Doc. 15).  That motion is fully briefed and ripe for disposition.

## II.    STANDARD OF REVIEW

In deciding a Rule 12(b)(6) motion to dismiss, courts should not inquire "whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims."  Scheuer v. Rhodes, 416 U.S. 232, 236 (1974); see Nami v. Fauver, 82 F.3d 63, 66 (3d Cir. 1996).  The court must accept as true the factual allegations in the complaint and draw all reasonable inferences from them in the light most favorable to the plaintiff.  See Phillips v.

---

[2] Ali also named the "Religious Accommodation Review Committee members" in his complaint, but he has failed to identify any such member despite being specifically ordered to do so.  (See Doc. 21).  Those unidentified defendants, therefore, will be dismissed from this action pursuant to Federal Rule of Civil Procedure 4(m).  (See id. at 2 ¶ 2); FED. R. CIV. P. 4(m).

Cnty. of Allegheny, 515 F.3d 224, 229 (3d Cir. 2008). In addition to the facts alleged on the face of the complaint, the court may also consider "exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents" attached to a defendant's motion to dismiss if the plaintiff's claims are based upon these documents. Mayer v. Belichick, 605 F.3d 223, 230 (3d Cir. 2010) (citing Pension Benefit Guar. Corp. v. White Consol. Indus., 998 F.2d 1192, 1196 (3d Cir. 1993)).

When the sufficiency of a complaint is challenged, the court must conduct a three-step inquiry. See Connelly v. Lane Constr. Corp., 809 F.3d 780, 787 (3d Cir. 2016) (internal citations, quotation marks, and footnote omitted). At step one, the court must "tak[e] note of the elements [the] plaintiff must plead to state a claim." Id. (quoting Ashcroft v. Iqbal, 556 U.S. 662, 675 (2009) (alterations in original)). Second, the court should distinguish well-pleaded factual allegations— which must be taken as true—from mere legal conclusions, which "are not entitled to the assumption of truth" and may be disregarded. Id. (quoting Iqbal, 556 U.S. at 679). Finally, the court must review the presumed-truthful allegations "and then determine whether they plausibly give rise to an entitlement to relief." Id. (quoting Iqbal, 556 U.S. at 679). Deciding plausibility is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Iqbal, 556 U.S. at 681.

III.    **DISCUSSION**

Defendants raise numerous bases for dismissal of Ali's claims.  (<u>See</u> <u>generally</u> Doc. 16).  The court will summarily address several of Defendants' arguments before analyzing the sufficiency of Ali's complaint.  First, Defendants argue that any official capacity claim that Ali may be raising should be dismissed as it is barred by Eleventh Amendment sovereign immunity.  This argument is misplaced because Ali does not assert any official capacity claims in his complaint.  (<u>See</u> <u>generally</u> Doc. 1).[3]

Second, Defendants argue that Ali has failed to allege personal involvement in the constitutional misconduct.  Yet the complaint expressly alleges that Secretary Harry promulgated the allegedly unconstitutional Shelf-Stable Policy and that Klemm denied Ali's requests for a religious accommodation, so Ali has sufficiently alleged the personal involvement of both defendants.

With these preliminary arguments resolved, the court turns to the sufficiency of Ali's Section 1983 claims.  The court will review each claim in turn.

---

[3] Defendant's argument is also incorrect insofar as Ali seeks prospective declaratory and injunctive relief.  Official capacity claims against state actors seeking such relief are not barred by Eleventh Amendment sovereign immunity.  <u>See</u> <u>Wheeling & Lake Erie Ry. Co. v. Pub. Util. Comm'n of Pa.</u>, 141 F.3d 88, 91 (3d Cir. 1998) (emphasis added) (citing, *inter alia*, <u>Ex parte Young</u>, 209 U.S. 123 (1908)).

### A.    First Amendment Free Exercise Claim

"Inmates clearly retain protections afforded by the First Amendment, . . . including its directive that no law shall prohibit the free exercise of religion." O'Lone v. Shabazz, 482 U.S. 342, 348 (1987) (citations omitted).  "Nevertheless, the fact of incarceration and the valid penological objectives of deterrence of crime, rehabilitation of prisoners, and institutional security justify limitations on the exercise of constitutional rights by inmates." DeHart v. Horn, 227 F.3d 47, 51 (3d Cir. 2000) (en banc).  Only beliefs which are (1) sincerely held, and (2) religious in nature are entitled to constitutional protection. See Wisconsin v. Yoder, 406 U.S. 205, 215-19 (1972); DeHart, 227 F.3d at 51.

Once a prisoner-plaintiff has established that they have a sincerely held religious belief, they must demonstrate that the challenged prison practice or policy (which allegedly infringes on that religious belief) in not reasonably related to penological interests under the factors set forth in Turner v. Safley, 482 U.S. 78 (1987). See DeHart, 227 F.3d at 51.  The Turner v. Safley analysis aims to balance the constitutional rights of prisoners with the "security, rehabilitation, and administrative concerns" of prisons. See id.

Defendants do not contend that Ali's beliefs are not religious in nature or not sincerely held.  Instead, they assert that the at-issue policy does not

substantially burden Ali's ability to practice his religion.  Under the Rule 12(b)(6) standard of review, the court disagrees.

As set forth in the complaint, Ali maintains that his religion requires him to participate in certain celebratory feasts, Eid al-Fitr and Eid al-Adha.  As part of this practice, he alleges that his faith mandates that he eat Halal foods prepared in a specific manner.  Yet, according to Ali, the DOC's Shelf-Stable Policy for supplemental food items stymies this practice and thus prohibits him from practicing his religion.  Ali further contends that there is no legitimate penological reason for this purportedly unconstitutional policy, as the DOC successfully operated for decades under systems where Halal food was either donated to the prisons or purchased by inmates with their own money through an approved DOC vendor.  These allegations, taken as true, are sufficient to plausibly allege a First Amendment free exercise claim.

### B.    RLUIPA Claim

Section 3 of RLUIPA provides, in relevant part, that "[n]o government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution . . . even if the burden results from a rule of general applicability," unless the government establishes that the burden furthers "a compelling interest," and does so by the "least restrictive means." 42 U.S.C. § 2000cc-1(a)(1), (2).  RLUIPA defines "religious exercise" to include "any exercise

of religion, whether or not compelled by, or central to, a system of religious belief." Id. § 2000cc-5(7)(A); see also Cutter v. Wilkinson, 544 U.S. 709, 715 (2005).

To state a claim under RLUIPA, a plaintiff must allege that the prison placed a "substantial burden" on the plaintiff's sincerely held religious belief.  See Washington v. Klem, 497 F.3d 272, 277-78 (3d Cir. 2007).  "[A] substantial burden exists where: (1) a follower is forced to choose between following the precepts of his religion and forfeiting benefits otherwise generally available to other inmates versus abandoning one of the precepts of his religion in order to receive a benefit; or (2) the government puts substantial pressure on an adherent to substantially modify his behavior to violate his beliefs." Id. at 280.  If a prisoner-plaintiff establishes a substantial burden on a sincerely held religious belief, the burden shifts to the defendant to show that the policy or practice furthers a compelling government interest and is the least restrictive means of doing so.  See Holt v. Hobbs, 574 U.S. 352, 361-62 (2015) (quoting 42 U.S.C. § 2000cc-1(a)).

The court need not expend significant time on assessing the sufficiency of Ali's RLUIPA claim.  Because RLUIPA provides greater protections for religious exercise than the First Amendment, see Holt, 574 U.S. at 361, a plaintiff who has plausibly stated a First Amendment free exercise claim likely has plausibly

alleged a RLUIPA claim as well.  See Adams v. Corr. Emerg. Response Team, 857 F. App'x 57, 60 (3d Cir. 2021) (nonprecedential) (noting the converse, i.e., that because RLUIPA provides greater protections for a prisoner's religious exercise, "a claim that cannot satisfy RLUIPA's threshold merits inquiry necessarily fails as to the First Amendment").

Nevertheless, it is well settled that RLUIPA "does not permit" actions against government officials "in their individual capacities." Sharp v. Johnson, 669 F.3d 144, 153, 154 (3d Cir. 2012).  Thus, because Ali has not asserted any official capacity claims in this case, his individual capacity RLUIPA claims against Harry and Klemm must be dismissed.

The court admonishes Ali that, if he intends to pursue an official capacity RLUIPA claim in an amended pleading, only equitable relief would be available. That is because in RLUIPA claims against state officials in their official capacities, monetary damages are barred by Eleventh Amendment sovereign immunity.  See id. at 155 (explaining that states did not consent to waive sovereign immunity "with respect to RLUIPA suits for damages against State employees in their official capacities" (citing Sossamon v. Texas, 563 U.S. 277, 285-86, 288 (2011))).  Thus, if Ali intends to assert a RLUIPA claim against Defendants in their official capacities in an amended complaint, relief for such a claim is limited to declaratory or injunctive relief.

## C.    Equal Protection Claim

The Equal Protection Clause of the Fourteenth Amendment provides that "[n]o State shall . . . deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1. To state a Fourteenth Amendment equal protection claim, a prisoner must allege "that he was treated differently than other similarly situated inmates, and that this different treatment was the result of intentional discrimination based on his membership in a protected class[.]" Mack v. Warden Loretto FCI, 839 F.3d 286, 305 (3d Cir. 2016). An equal protection claim can also be asserted under a "class of one" theory, whereby a plaintiff alleges that a state actor intentionally treated him differently from others who are similarly situated "and there is no rational basis for the difference in treatment." Phillips, 515 F.3d at 243 (quoting Village of Willowbrook v. Olech, 528 U.S. 562, 564 (2000)). "[W]hen an inmate asserts an equal protection claim based on the allegedly disparate treatment of different religious groups, the governing standard is whether the disparate treatment is 'reasonably related to legitimate penological interests.'" Fraise v. Terhune, 283 F.3d 506, 521 (3d Cir. 2002) (quoting Dehart, 227 F.3d at 61).

Ali alleges that the DOC discriminates against Islamic prisoners with respect to supplemental food service for religious meals. He maintains that, although the DOC has implemented a policy that no "government funds" or

11

"Inmate General Welfare Funds" are to be used to purchase specialty food items for religious meals, the DOC in fact pays for specialty Passover meals for Jewish prisoners and also has a special menu on some "Christian" holidays.[4] (Doc. 1 ¶¶ 23, 31, 33).

Ali has stated an equal protection claim with respect to his allegations involving the Passover meal. According to Ali, Islamic prisoners are treated differently than similarly situated Jewish prisoners—without legitimate penological justification—insofar as the DOC pays for a special Passover meal but will not accommodate the Islamic feasts of Eid al-Fitr and Eid al-Adha. These allegations suffice to state an equal protection claim. See Dehart, 227 F.3d at 61 (explaining that, for an inmate to recover on an equal protection claim, he must demonstrate that prison's treatment of him and its disparate treatment of inmates from a different religious group is not "reasonably related to legitimate penological interests" (citing Clark v. Groose, 36 F.3d 770, 773 (8th Cir. 1994))).

## D. Qualified Immunity

"Qualified immunity shields federal and state officials from money damages unless a plaintiff pleads facts showing (1) that the official violated a statutory or

---

[4] Ali lists Independence Day, Thanksgiving, Christmas, and New Years as examples of "Christian holidays," (Doc. 1 ¶¶ 31-32), but from this list only Christmas could potentially be considered a "Christian" religious holiday. Furthermore, Ali has not alleged that any particular food is required to be eaten by Christians on Christmas (or any other holiday he mentions), thus making his comparison inapposite.

constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct." Ashcroft v. al-Kidd, 563 U.S. 731, 735 (2011) (citation omitted). The court has "discretion to decide which of the two prongs of qualified-immunity analysis to tackle first." Id.

"A Government official's conduct violates clearly established law when, at the time of the challenged conduct, '[t]he contours of [a] right [are] sufficiently clear' that every 'reasonable official would [have understood] that what he is doing violates that right.'" Id. at 741 (alterations in original) (quoting Anderson v. Creighton, 483 U.S. 635, 640 (1987)). "[C]learly established rights are derived either from binding Supreme Court and Third Circuit precedent or from a 'robust consensus of cases of persuasive authority in the Courts of Appeals.'" Bland v. City of Newark, 900 F.3d 77, 84 (3d Cir. 2018) (quoting Fields v. City of Philadelphia, 862 F.3d 353, 361 (3d Cir. 2017)).

Defendants argue that qualified immunity shields them from liability for money damages for Ali's Section 1983 claims. However, they only invoke the first prong of the qualified immunity analysis; i.e., they simply assert that the alleged conduct does not violate a statutory or constitutional right. Because the court holds otherwise, Defendants' undeveloped qualified immunity argument fails.

### E.    Preliminary Injunctive Relief

Ali appears to seek a preliminary injunction with respect to the Shelf-Stable Policy.  (See generally Docs. 2, 3, 24).  However, no such motion was ever filed, which may explain why Defendants have not responded to Ali's assertions.  Ali did seek preliminary injunctive relief as part of his complaint.  (Doc. 1 at p. 8).

The court independently observes, however, that the policy on which Ali relies for his claims (DC-ADM 819, which is publicly available) appears to contain language that would alleviate the alleged constitutional issues with the Shelf-Stable Policy.  To wit: Section 1 of DC-ADM 819 provides for up to three supplemental shelf-stable food items _or_ three "outside" food items "from one licensed food establishment," so long as at least five inmates from the faith group have the funds to secure said items.  See DEP'T OF CORR., *Policy Statement DC-ADM 819*: Religious Activities, § 1(E)(4)(a)-(c) (December 13, 2023), https://www.pa.gov/content/dam/copapwp-pagov/en/cor/documents/about-us/doc-policies/819-religious-activities.pdf (last visited Mar. 13, 2025).

Neither Ali nor Defendants mention this additional supplemental "outside" food option, which presumably could include Halal food from a licensed restaurant that would meet the specifications for the Islamic celebratory feasts.  Accordingly, if Ali seeks to press his request for preliminary injunctive relief, he must file an appropriate motion and brief in support, (see LOCAL RULE OF COURT

7.5), and in doing so he must address the full version of DC-ADM 819 and explain why his religious food requirements could not be met through the "outside" supplemental food option provided by Section 1(E)(4)(c).

### F.    Leave to Amend

Generally, "*in forma pauperis* plaintiffs who file complaints subject to dismissal under Rule 12(b)(6) should receive leave to amend unless amendment would be inequitable or futile." Grayson v. Mayview State Hosp., 293 F.3d 103, 114 (3d Cir. 2002).  The court will grant Ali leave to amend.

If Ali chooses to file an amended complaint in conformity with this Memorandum, it should be a stand-alone document, complete in itself and without reference to any previous pleadings.  The amended complaint should set forth his Section 1983 claims—including the claims that survived Defendants' Rule 12(b)(6) motion—against defendants Harry and Klemm in short, concise, and plain statements, and in sequentially numbered paragraphs (like his original complaint).  Ali must address the pleading deficiencies identified in this Memorandum.  In particular, if he intends to assert a RLUIPA claim, he can only bring that claim against Defendants in their official capacities and he may only seek prospective equitable relief under that statutory provision.

Ali must sign the amended complaint and indicate the nature of the relief sought.  He may not include unrelated claims against different defendants in

violation of Federal Rule of Civil Procedure 20(a)(2).  Ali may not name as

defendants the "Religious Accommodation Review Committee members," as

those unidentified defendants are being dismissed from this action under Federal

Rule of Civil Procedure 4(m).  If Ali does not timely file an amended complaint,

this case will proceed only as to his First Amendment free exercise and

Fourteenth Amendment equal protection claims against Harry and Klemm.

## IV.    CONCLUSION

Based on the foregoing, the Court will grant in part and deny in part

Defendants' motion to dismiss under Federal Rule of Civil Procedure 12(b)(6).

An appropriate Order follows.

Date: 3/13/25

BY THE COURT:

JUDGE JULIA K. MUNLEY
United States District Court